UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

MAR 1 5 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-265-JBC

MARY LOU DUFF,                                                                PLAINTIFF

V.                          **PROPOSED FINDINGS OF FACT
                            AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
  Social Security Administration,                                            DEFENDANT

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Mary Lou Duff, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision on remand from the Appeals Council concerning plaintiff's onset date. On remand, the ALJ determined that based on plaintiff's application for Disability Insurance Benefits (DIB) filed on June 20, 2001, plaintiff was not entitled to disability benefits at any time prior to July 1, 2003, but that plaintiff was entitled to DIB benefits beginning on July 1, 2003.

This matter is before the court on cross-motions for summary judgment [DE ##11, 12], which are ripe for review.

By Order of December 18, 2005, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

On June 20, 2001, plaintiff filed the DIB application at issue herein, alleging that she became disabled on May 20, 2001, due to diabetes mellitus, cellulitis, and peripheral neuropathy. Plaintiff's DIB application was denied, resulting in an ALJ hearing that was conducted on July 9, 2002. On August 28, 2002, ALJ Peter M. Davenport issued a hearing decision unfavorable to plaintiff. (Tr. 164-168). Thereafter, the Appeals Council granted plaintiff's request for review of the ALJ's

decision, and on March 17, 2003, the Appeals Council vacated the ALJ's decision and remanded this

matter to the ALJ for the following reasons:

- The hearing decision, page 2, refers to Dr. Finley Hendrickson's opinions and then rejects them, page 4, apparently based upon vocational expert testimony without reference to the basis in the medical evidence for the weight given the opinion evidence. The decision, page 2, also refers to Dr. Jeremy Tartar's opinion and apparently accepts it when establishing the residual functional capacity without providing rationale for the weight given.

- The decision, page 3, refers to objective evidence when assessing the claimant's credibility but does not consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage and effectiveness of medication; treatment other than medication; and other measures used to relieve symptoms.

- The hearing decision indicates that the claimant has the residual functional capacity for work-related functions not requiring prolonged standing or heavy lifting, finding number 7, but the decision does not contain a function-by-function assessment of the claimant's ability to do work-related physical and mental activities. The decision does not specify how much the claimant can lift nor how long the claimant can stand. The claimant's testimony reveals that her past relevant work as a laboratory technician and quality control inspector involved 3-4 hours of standing and walking. The laboratory technician and packer required lifting up to 40 pounds occasionally. Consequently, it is unclear, without specific limitations, whether the claimant retains the residual functional capacity to perform her past relevant work. Therefore, further evaluation and rationale are necessary.

- The record reveals that the vocational expert offered testimony through a teleconference and was not called until after the claimant completed her testimony. According to HALLEX 1-2-555, when the vocational expert is not privy to the entire hearing testimony, the Administrative Law Judge is required to: ensure on the record that the vocational expert has examined all vocational evidence of record; ensure that the record contains an accurate statement of the expert's professional qualifications; give the claimant and the representative an opportunity to ask the expert witness questions about his professional qualifications; and, summarize the opening statement or relevant testimony on the record (i.e., testimony regarding the claimant's vocational history) for which the vocational expert was not present. An audit of the hearing testimony reveals that these procedures were not followed; therefore, further action is necessary.

(Tr. 181-82).

Subsequent to remand, new medical evidence was obtained, including a consultative

examination, and ALJ Davenport held another hearing on December 9, 2003. On December 31,

2003, ALJ Davenport issued a second hearing decision that was partially favorable to plaintiff, finding that plaintiff had not been disabled prior to July 1, 2003, but that she became disabled on July 1, 2003. (Tr. 21-27). On June 2, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 13-15), making the ALJ's decision the final decision by the Commissioner, resulting in the filing of the present action.

Plaintiff was born on June 28, 1940, was sixty-three (63) at the time of the second ALJ hearing and alleges that she became disabled on May 20, 2001, due to diabetes mellitus, cellulitis, and peripheral neuropathy. Plaintiff has a high school education with two years of post-secondary education. Her past relevant work (PRW) experience includes employment as a packer, quality control worker, and lab technician. (Tr. 21). Summarizing the ALJ's findings, the ALJ found that (1) claimant has not engaged in any substantial gainful activity since her alleged onset date; (2) claimant's impairments are "severe" impairments; however, these impairments do not, singly or in combination, meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations are generally credible, as to her functional capacity since July 1, 2003; (4) from her alleged onset date until July 1, 2003, claimant had the residual functional capacity (RFC) to perform work that did not require prolonged standing or handling of heavy objects; (5) claimant's PRW as a quality control worker did not require the performance of work-related activities precluded by her residual functional capacity (RFC) from her alleged onset date until July 1, 2003; (6) claimant's medically determinable impairments did not prevent her from performing her PRW from her alleged onset date until July 1, 2003; (7) claimant was not disabled for the period of time from her alleged onset date until July 1, 2003; (8) as of July 1, 2003, due to deconditioning, claimant had the RFC to perform the demands of no more than sedentary work or work that is generally performed while sitting and does not require lifting in excess of ten pounds; (9) as of July 1, 2003, claimant is unable to perform her PRW; (10) claimant does not have skills that are transferable to work within her RFC; (11) based on claimant's RFC as of July 1, 2003, based on medical-vocational rule 201.06, there are no jobs existing in significant numbers that she can perform; (12) claimant has been under

3

a disability, as defined by the Social Security Act and Regulations, since July 1, 2003, but not at any time prior thereto. (Tr. 25-27).

With the denial by the Appeals Council of plaintiff's request to review the ALJ's decision, the ALJ's decision represents the final decision of the Commissioner, and this matter is ripe for judicial review under § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir. 1990), (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981, cert. denied, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984).

### IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of her motion for summary judgment, plaintiff submits that (1) there is no medical evidence of record to support the ALJ's finding that her physical condition had deteriorated after May 2001 to the point that she became disabled on July 1, 2003, (2) the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Finley Hendrickson, who opined that plaintiff was disabled as of May 25, 2001, and (3) the ALJ failed to comply with the directions of the Appeals Council to reconsider his findings as to plaintiff's pain and credibility. For these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence and requests reversal of the Commissioner's denial decision and an award of disability benefits

4

retroactive to her onset date, May 20, 2001. Alternatively, plaintiff requests that matter be remanded to the Commissioner for a new ALJ hearing.

In response, the defendant submits that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decisions, the medical evidence of record, and the transcripts of the ALJ hearings.

**A.   Medical evidence that plaintiff's physical condition deteriorated after May 2001**

Subsequent to remand, additional medical evidence was obtained concerning plaintiff's physical condition subsequent to the first ALJ hearing decision, including a consultative examination. In order to fully appreciate the new medical evidence obtained subsequent to remand, it is necessary to first review the medical evidence of record at the time of the original ALJ decision.

**1.   Medical evidence of record prior to remand**

**a.   Dr. Finley Hendrickson**

Dr. Hendrickson has been plaintiff's treating physician at least since June 5, 2000. The record is replete with office notes from Dr. Hendrickson evidencing plaintiff's numerous visits, nearly every other month or more often, to his office for treatment of three primary conditions: diabetes mellitus, peripheral neuropathy, and cellulitis on her right foot. Plaintiff was hospitalized on May 26, 2001, for treatment of cellulitis of second, third, and fourth toes of her right foot. (Tr. 123). Dr. Hendrickson's office notes dated November 21, 2001, state in relevant part: "3. Peripheral neuropathy, stable at present time, remains disabled." (Tr. 100). Dr. Hendrickson's office notes dated July 3, 2002, state in relevant part: "In for f/u on her foot. Foot looks okay. She is having a lot of pain. She has arthritis. She has neuropathy. . . . Take Extra Strength Tylenol for the pain. She should get her disability, I think." (Tr. 154).

Thereafter, in a letter of July 23, 2002, addressed to plaintiff's counsel, Dr. Hendrickson

articulated the basis for his opinion that plaintiff is disabled, as follows:

> I concur with my patient's statement. This lady cannot be on her feet for prolonged
> periods of time. She has Diabetes Mellitus with peripheral neuropathy and has had
> numerous ulcers on her feet in the recent past with hospitalization for cellulitis of the
> right foot in May 2001, which took three months to finally resolve, cellulitis of the
> left foot in January of 2002, and an ulcer on the heel of her right foot in April of
> 2002.
>
> Ms. Duff continues to have considerable pain in her feet and was last treated by me
> for this problem on 7/3/2002. I have recommended she seek disability due to her
> ongoing problems with her feet secondary to diabetes and peripheral vascular disease.

(Tr. 153).

### b.    Jeremy W. Tarter, M.D.

Dr. Hendrickson, plaintiff's treating physician, referred plaintiff to an orthopedic specialist,

Dr. Jeremy W. Tarter, of Danville Orthopaedic Associates, P.S.C., for evaluation concerning her

ongoing foot problems. In a letter dated July 23, 2001, to Phillips Lighting, plaintiff's former

employer, Dr. Tarter stated:

> I've seen Ms. Duff in the office for complications related to her diabetes and diabetic
> peripheral neuropathy. She recently was hospitalized because of these diagnoses.
> I've seen her on an outpatient basis since that time.
>
> It has been my medical opinion that because of Ms. duff's diabetes and peripheral
> neuropathy that in the future she will have significant difficulty doing work-related
> activities that require prolonged standing, carrying or handling heavy objects.
> Likewise, I think she will have difficulty with stairs and steps in the long term. This
> is primarily because of her peripheral neuropathy and the fact that prolonged impact
> over the long term can lead to significant physical difficulties for her. Therefore, I
> believe the above mentioned restrictions should be permanently restricted for her.

(Tr. 150).

### 2.    Medical evidence obtained subsequent to remand

### a.    Dr. Finley Hendrickson

Dr. Hendrickson remains plaintiff's treating physician and has continued to see and treat

plaintiff for her foot problems stemming from her diabetes mellitus and peripheral neuropathy. His

office notes for the period of time from September 3, 2002, to March 13, 2003, are of record at

Exhibit 10, and his office notes for the period of time from May 28, 2003, to October 8, 2003, are

6

of record at Exhibit 13.  The office notes dated September 3, 2002, state in relevant part:  "In for a c/u, still being denied her disability.  She is definitely disabled." (Tr. 213).

**b.      Consultative examination**

At the request of the Administration, subsequent to remand, plaintiff underwent a consultative examination by Jeff Reichard, M.D., on July 20, 2003.  Dr. Reichard's report of this examination is identified as Exhibit 11F (Tr. 274-283).  His report notes the following conditions: (1) exogenous obesity, (2) noninsulin dependent diabetes mellitus, (2a) peripheral neuropathy, lower extremities, and (3) hypertension, poorly controlled.  (Tr. 276).  On page 3 of this report, Dr. Reichard states: "Based on the findings of this examination, the patient appears capable of performing a very mild amount of ambulating, standing, bending, stooping, and lifting heavy objects." (Tr. 276).  As part of his report, Dr. Reichard attached to his report a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)," wherein he noted plaintiff's exertional limitations.  Dr. Reichard noted that plaintiff's ability to lift/carry weight was affected by her impairment.  Specifically, Dr. Reichard restricted plaintiff to occasionally lifting/carrying ten pounds and to frequently carrying less than ten pounds. (Tr. 280).  Dr. Reichard also noted that plaintiff could walk and/or stand fewer than two hours in an eight-hour workday.  Id. Further, Dr. Reichard noted that plaintiff could never climb, balance, kneel, crouch, crawl, or stoop. (Tr. 281).  However, he also noted that plaintiff's ability to sit was unaffected by her impairment. Id.

### Discussion/analysis

Comparing the medical evidence of record prior to remand with the new medical evidence obtained subsequent to remand, the Magistrate Judge concludes that the new medical evidence of record does not support a finding that plaintiff's peripheral neuropathy condition had deteriorated subsequent to the original ALJ's decision to the point that plaintiff became disabled by that condition on July 1, 2003.  A review of all of the medical evidence concerning plaintiff's peripheral neuropathy, both prior to and subsequent to remand, reflects that there has been no change in

7

plaintiff's peripheral neuropathy from 2001 to July 1, 2003. However, that is not to say that this medical evidence will not support a finding that plaintiff is not disabled by that condition. To the contrary, this medical evidence, both prior to and subsequent to remand, will support a finding that plaintiff is disabled by peripheral neuropathy, not only as of July 1, 2003, but also that plaintiff has been disabled by this condition as early as May 20, 2001, plaintiff's alleged onset date.

The foregoing conclusion is based on the fact that both plaintiff's treating physician, Dr. Hendrickson, and the two consultative physicians, Drs. Tarter and Reichard, diagnosed the same condition. Dr. Hendrickson diagnosed peripheral neuropathy in May 2001. His office notes dated May 25, 2001, noted that plaintiff "does not have any sensation with filament test up into the about mid calf." (Tr. 113). Four days later, while plaintiff was hospitalized for cellulitis in her right foot, Dr. Hendrickson noted "sensory decreased perception in the lower extremities" on neurological examination. (Tr. 123). Less than one month later, on June 14, 2001, Dr. Tarter examined plaintiff and found "diminished sensation diffusely" in the right leg and a history of peripheral neuropathy. (Tr. 137). On July 23, 2001, Dr. Tarter opined that plaintiff's limitations were caused by peripheral neuropathy and that she would have significant difficulty with work-related activities like prolonged standing. (Tr. 150). By September 2002, Dr. Tarter noted that plaintiff had a "dense diabetic peripheral neuropathy" and that her ability to treat her feet was "suboptimal" due to her neuropathy. (Tr. 180). On July 20, 2003, when Dr. Reichard performed a consultative examination, he found "pinprick and light touch are diminished in the lower extremities in a stocking distribution up to her mid calf." (Tr. 276).

Thus, the medical evidence reflects that there has been essentially no change in plaintiff's peripheral neuropathy during the period of time from May 2001 through July 20, 2003. Dr. Reichard's findings during his consultative examination of plaintiff on July 20, 2003, are consistent with and virtually identical to Dr. Hendrickson's findings from the first time he noted diminished sensation up her mid calf in May of 2001.

8

In his second hearing decision, the ALJ states that he gave more weight to the new medical evidence than he did to the state agency opinions. Thus, ALJ gave more weight to the post-remand medical evidence of plaintiff's treating physician, Dr. Hendrickson, and the report of the consultative examination by Dr. Reichard. Based on this "new medical evidence," the ALJ concluded:

> Because of her severe impairments and due to deconditioning, since July 1, 2003, however, the claimant can no longer perform her past relevant work. The claimant's description of her limitations is consistent generally with the objective and other evidence of her functional capacity as of July 1, 2003.

Tr. 24.

Concerning the ALJ's reference to plaintiff's "deconditioning" (presumably during the period of time between the original ALJ hearing on July 9, 2002, and the second ALJ hearing held on December 9, 2003) as being a factor in her no longer being able to perform her past relevant work, there is no statement in the new medical evidence by either plaintiff's treating physician or the consultative examiner that plaintiff's physical condition has deteriorated and/or that her peripheral neuropathy has become more severe due to "deconditioning." Thus, the ALJ's finding concerning "deconditioning" is unsupported by the medical evidence.

To summarize, since the post-remand medical evidence contains no information reflecting a deterioration in plaintiff's peripheral neuropathy in the interim between May 2001 and July 1, 2003, the Magistrate Judge must conclude that the status of plaintiff's peripheral neuropathy has remained constant. Therefore, since the ALJ found in the post-remand decision that plaintiff became disabled as of July 1, 2003, due to her severe impairments (primarily peripheral neuropathy resulting from diabetes mellitus), due to the fact that there is no medical evidence of record to suggest that plaintiff's peripheral neuropathy has deteriorated or become more severe subsequent to May of 2001, the Magistrate Judge concludes that plaintiff was also disabled by this peripheral neuropathy condition in May of 2001. Consequently, the Magistrate Judge also concludes that the ALJ's

decision that plaintiff did not become disabled until July 1, 2003, is not supported by substantial evidence.[1]

## V. CONCLUSION

Having reviewed the applicable law concerning judicial review of the administrative record, including the medical evidence, the cross-motions for summary judgment, and the ALJ's post-remand decision, the Magistrate Judge concludes that the Commissioner's decision that plaintiff did not become disabled until July 1, 2003, is not supported by substantial evidence and that plaintiff is entitled to an award of disability benefits retroactive to her onset date, May 20, 2001.

Accordingly, **IT IS HEREBY RECOMMENDED** that defendant's motion for summary judgment [DE #12] be **DENIED**, that plaintiff's motion for summary judgment [DE #11] be **GRANTED**, that the defendant's decision that plaintiff did not become disabled until July 1, 2003, be **REVERSED,** and that this action be **REMANDED** to the Commissioner for an award of disability benefits retroactive to plaintiff's onset date, May 20, 2001.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P.

---

[1] Although it appears that plaintiff's remaining two arguments made in support of her motion for summary judgment (*i.e.*, the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Finley Hendrickson, who opined that plaintiff was disabled as of May 25, 2001, and the ALJ failed to comply with the directions of the Appeals Council to reconsider his findings as to plaintiff's pain and credibility) have merit, the Magistrate Judge need not consider plaintiff's remaining two arguments at this time, since the Magistrate Judge has concluded that the post-remand medical evidence also supports a finding that plaintiff was disabled as of May 20, 2001.

6(e).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  Fed.R.Civ.P. 72(b).

This __14th__ day of March, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

11